J-S25043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERMAINE A. PALMER | : | |
| | : | |
| Appellant | : | No. 180 EDA 2024 |

Appeal from the Order Entered December 5, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0732621-1993

BEFORE: PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED SEPTEMBER 19, 2025**

Appellant, Jermaine A. Palmer, appeals from the December 5, 2023 order denying his petition to enforce his plea agreement, which the trial court construed as an untimely petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant seeks to argue that his plea agreement was violated by the Commonwealth, and that his counsel acted ineffectively. Additionally, Appellant's counsel, Stephen T. O'Hanlon, Esq., has filed a **Turner/Finley**[1] 'no-merit' letter and a petition to withdraw from representing Appellant. After careful review, we grant counsel's petition to withdraw and affirm the court's December 5, 2023 order.

_____

[1] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

The facts of Appellant's underlying convictions are not germane to his instant appeal. We glean the following procedural history from the record, the briefs of the parties, and the court's Pa.R.A.P. 1925(a) opinion. On February 21, 1995, Appellant pled guilty to third-degree murder, conspiracy, and possessing an instrument of crime in Philadelphia. At the time he pled guilty, Appellant was already serving a sentence for a prior third-degree murder conviction (hereinafter, "Pittsburgh murder"). Accordingly, Appellant was subject to a mandatory term of life incarceration pursuant to 42 Pa.C.S. § 9715(a) (stating, in pertinent part, that "any person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder … shall be sentenced to life imprisonment"). That same day, the court sentenced Appellant to that mandatory term. He did not file a direct appeal.

Three days later, on February 3, 1995, the prosecutor in Appellant's case, Philadelphia Assistant District Attorney (ADA) Hugh Colihan, Esq., was quoted in a newspaper article as saying that "he got [Appellant] to admit to the Pittsburgh murder during the guilty plea colloquy" in the instant case. Appellant's *Pro Se* Petition to Enforce the Terms of the Plea Agreement, 2/26/20, at 3. Appellant did not file any post-sentence motion to withdraw his plea, or seek any other relief, based on ADA Colihan's statement, which we discuss in further detail *infra*.

Nearly two decades went by before Appellant filed a *pro se* PCRA petition in 2013. Counsel was appointed, but filed a petition to withdraw. Ultimately,

the trial court denied Appellant's petition on February 19, 2016, on the basis that it was untimely. Appellant did not appeal.

Instead, in 2016, Appellant filed a *habeas* petition in the United States District Court for the Western District of Pennsylvania, arguing that he had received an illegal sentence of life imprisonment in this case. The federal court subsequently denied Appellant's *habeas* petition.

Then, on February 26, 2020, Appellant filed a *pro se* document entitled, "Petition to Enforce the Terms of the Plea Agreement Pursuant to 42 Pa.C.S.[] § 9715(b) and Modify the Sentence so that Petitioner Receives the Benefit of the Plea Agreement." Michael Pileggi, Esq., was appointed to represent Appellant and filed an "Amended Petition to Enforce the Plea Agreement Pursuant to 42 Pa.C.S.[] § 9715(b) and Modify the Sentence so that Defendant Receives the Benefit of the Bargain" (hereinafter, "Amended Petition") on March 29, 2022. In these filings, Appellant stressed that section 9715(b) states, in pertinent part:

> Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.

42 Pa.C.S. § 9715(b). ***See also*** Amended Petition, 3/29/22, at unnumbered 3. Appellant essentially argued that he entered his plea in the instant case with the understanding and agreement that he could challenge his Pittsburgh murder conviction which, if overturned, would permit him to then challenge the mandatory term of life imprisonment imposed in this case. ***See id.***

- 3 -

Appellant then claimed that the Commonwealth violated this plea agreement when ADA Colihan made his statement to the newspaper that Appellant had 'admitted' to committing the Pittsburgh murder at the plea hearing in the instant case.  *Id.*  Appellant claimed that ADA Colihan's statement implied that he had confessed to the Pittsburgh murder, which was false, and that he was prejudiced by this statement because the federal court had relied on it in denying his 2016 *habeas* petition.  *Id.*  In sum, Appellant argued that ADA Colihan's statement to the media interfered with his ability to challenge his Pittsburgh murder conviction, thereby violating the terms of the plea agreement in the instant case.  *Id.* at unnumbered 7.  He insisted that he is entitled to either "a modification of his sentence to provide him with the benefit of the plea bargain as contemplated…; *i.e.*, a resentencing without application of [section] 9715(a)[,]" or to be permitted to withdraw his plea. *Id.* at unnumbered 8.

The Commonwealth filed a motion to dismiss Appellant's Amended Petition, to which Appellant filed a response.  On July 20, 2023, a hearing was conducted.  Treating Appellant's petition as a PCRA filing, and despite the fact that it held a hearing, the court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition as untimely on November 9, 2023.  Appellant filed a *pro se* response, despite still being represented by Attorney Pileggi.  On December 5, 2023, the court issued an order dismissing Appellant's petition.

On December 27, 2023, Appellant filed a timely *pro se* notice of appeal, as well as a *pro se* motion for the appointment of new counsel.  It does not

appear that the trial court acted on that motion, as Appellant was still represented by counsel. On February 15, 2024, Appellant filed with this Court a *pro se* "Motion to Remand," claiming that on December 6, 2023, Attorney Pileggi had notified him that he had been permitted to withdraw and that the court would appoint Appellant new counsel on appeal, if Appellant so desired. *See* Motion, 2/15/24, at unnumbered 1. Appellant explained that he had filed a *pro se* motion for the appointment of new counsel, and because no action had been taken on that motion, he requested that this Court remand. *Id.* at unnumbered 2. On March 12, 2024, we granted Appellant's request and remanded his case for the court to determine whether he was entitled to the appointment of counsel.

Attorney O'Hanlon thereafter entered his appearance in this Court on Appellant's behalf. Attorney O'Hanlon also complied with the court's order to file, on Appellant's behalf, a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Therein, counsel preserved the following issues for our review:

> 1. The [trial] court's dismissal of Appellant's [Amended] Petition was not supported by the [r]ecord and free from legal error because the … []ADA[] induced Appellant's plea in the underlying [case] and then made statements to the press in relation to the ADA['s] having Appellant admit to a second [m]urder in Pittsburgh in violation of 42 Pa.C.S. § 9715(b).
>
> 2. PCRA counsel was ineffective in a layered context and Appellant suffered prejudice because PCRA counsel (a) did not refer the [trial] court to Exhibit 3 of the Amended Petition and instead relied on the transcript of proceedings, (b) section 9715(b) was not articulated as a basis for dispute and the harsher sentence which

Appellant received, and (c) section 9715(b) was not articulated as falling outside of the ambit of the PCRA.

Rule 1925(b) Statement, 11/4/24, at 1-2 (some formatting altered; citations to the record omitted). The court thereafter filed a Rule 1925(a) opinion.

On February 10, 2025, Attorney O'Hanlon filed with this Court an application to withdraw from representing Appellant, along with a **Turner/Finley** no-merit letter. We must therefore begin our review by determining if Attorney O'Hanlon has satisfied the requirements for withdrawal.

> Counsel petitioning to withdraw from PCRA representation must proceed ... under [**Turner**, **supra**, and **Finley**, **supra**, and] ... must review the case zealously. **Turner/Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> ***
>
> [W]here counsel submits a petition and no-merit letter that … satisfy the technical demands of **Turner/Finley**, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted).

Here, we conclude that Attorney O'Hanlon has substantially complied with the technical requirements for withdrawal. Counsel explains in his ***Turner/Finley*** letter the nature and extent of his review of Appellant's issues, and details his determination as to why they are meritless. ***See*** No-Merit Letter at 1-9. Attorney O'Hanlon also avers, in his petition to withdraw, that he has sent Appellant copies of his no-merit letter and motion to withdraw, and he attached a letter addressed to Appellant in which he notified Appellant of his right to proceed *pro se* or retain new counsel. Accordingly, we will now review the issues Appellant desires to raise herein to discern if counsel is correct that they are meritless.

Preliminarily, we note that Attorney O'Hanlon does not offer a very developed discussion of the claims that Appellant desires to raise on appeal. Although we chastise counsel for not providing this Court with a more detailed analysis of Appellant's claims, we will not remand for counsel to file an advocate's brief or a new no-merit letter, as we can sufficiently glean from the details provided by counsel, the Commonwealth's brief, the court's opinion, and the record before us, that the issues Appellant seeks to raise herein are meritless.

Throughout Appellant's various filings in this case, he repeatedly averred that his plea agreement was violated when ADA Colihan was quoted in the February 3, 1995 newspaper article as saying that "he got [Appellant] to admit to the Pittsburgh murder during the guilty plea colloquy [in the instant case]." Appellant's *Pro Se* Petition to Enforce the Terms of the Plea

Agreement, 2/26/20, at 3.[2]  Essentially, Appellant maintains that he pled guilty upon the agreement that he would be able to challenge his Pittsburgh murder conviction and, if successful, seek the vacation of his mandatory term of life imprisonment in this case under section 9715(b).  He argues that when ADA Colihan made the statement to the newspaper, it hindered his ability to challenge his Pittsburgh murder conviction, thereby violating his plea agreement in this case.

Initially, we conclude that Appellant's claim that his plea agreement was violated, and that he is entitled to specific enforcement of his plea agreement, is not cognizable under the PCRA.  Our Court has held that "a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual enforcement theory of specific performance."

---

[2] **See also id.** at 9 ("[ADA] Colihan's statements violated the plea agreement resulting in a manifest injustice."); Amended Petition to Enforce the Plea Agreement, 3/29/22, at unnumbered 1 (stating that ADA Colihan "violate[d] the agreement by issuing a false statement to the media which [said] that he had [Appellant] admit to the Pittsburgh murder"); **id.** at unnumbered 3 (alleging that ADA Colihan "breach[ed] the plea agreement … [o]n or around February 23, 1995," when he "issued a false statement to the media") (formatting altered); Petitioner's Response to Commonwealth's Motion to Dismiss, 4/3/23, at 1 ("[Appellant] argues that [ADA] … Colihan's statements to the media deprived him of the benefits conferred under … 42 Pa.C.S.[] § 9715(b) when he entered a guilty plea of third-degree murder on February 21, 1995."); **id.** at 3 ("[Appellant] asserts that the Commonwealth violated the parties' plea agreement by issuing a false statement to the media stating that the ADA trying the case had [Appellant] admit to the Pittsburgh murder 'just to make sure that he doesn't try to get out of that conviction.'") (citation omitted; formatting altered).

***Commonwealth v. Kerns***, 220 A.3d 607, 611–12 (Pa. Super. 2019). We

explained in ***Kerns*** that,

> [c]ontract interpretation is a question of law, so "[o]ur standard
> of review over questions of law is *de novo* and to the extent
> necessary, the scope of our review is plenary." ***Gillard v. Martin***,
> 13 A.3d 482, 487 (Pa. Super. 2010). Plea bargains play a critical
> role in the criminal justice system of this Commonwealth:
>
> ***
>
> Assuming the plea agreement is legally possible to fulfill,
> when the parties enter the plea agreement and the court
> accepts and approves the plea, then the parties and the
> court must abide by the terms of the agreement. Specific
> enforcement of valid plea bargains is a matter of
> fundamental fairness. The terms of plea agreements are
> not limited to the withdrawal of charges, or the length of a
> sentence. Parties may agree to—and seek enforcement of—
> terms that fall outside these areas.
>
> Although a plea agreement occurs in a criminal context, it
> remains contractual in nature and is to be analyzed under
> contract-law standards. Furthermore, disputes over any
> particular term of a plea agreement must be resolved by
> objective standards. A determination of exactly what
> promises constitute the plea bargain must be based upon
> the totality of the surrounding circumstances and involves a
> case-by-case adjudication.
>
> Any ambiguities in the terms of the plea agreement will be
> construed against the Government. Nevertheless, the
> agreement itself controls where its language sets out the
> terms of the bargain with specificity. Regarding the
> Commonwealth's duty to honor plea agreements, well-
> settled Pennsylvania law states:
>
>> Our courts have demanded strict compliance with that
>> duty in order to avoid any possible perversion of the
>> plea bargaining system, evidencing the concern that
>> a defendant might be coerced into a bargain or
>> fraudulently induced to give up the very valued
>> constitutional guarantees attendant the right to trial
>> by jury.

> Whether a particular plea agreement has been breached depends on what the parties to the agreement reasonably understood to be the terms of the agreement.
>
> ***
>
> The convicted criminal is entitled to the benefit of his bargain through specific performance of the terms of the plea agreement. Thus, a court must determine whether an alleged term is part of the parties' plea agreement. If the answer to that inquiry is affirmative, then the convicted criminal is entitled to specific performance of the term.

*Id.* at 612-13 (cleaned up).

Here, we agree with Attorney O'Hanlon that "[t]he only agreement" that was part of Appellant's plea "was a life sentence to avoid the death penalty." No-Merit Letter at 3 (citing N.T. Plea, 2/21/95, at 29).[3] In the portion of the plea proceeding cited by counsel, the following exchange took place:

> [ADA Colihan:] It should be clear to [Appellant] that the only thing that he advances in his own cause by the entry of this guilty plea here is that he escapes the prospect of the death penalty and that there are no other considerations, promises or inducements whatsoever involved in this plea negotiation.
>
> Thank you, sir.
>
> [Defense Counsel:] That's correct, Your Honor.

---

[3] We note that, although we conclude Appellant's petition to enforce his plea is not cognizable under the PCRA, we will still apply the dictates of *Turner/Finley* to counsel's withdrawal request, rather than the heightened requirements of *Anders v. California*, 386 U.S. 738 (1967), as this is not a direct appeal from Appellant's judgment of sentence. *See Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007) ("The heightened protection afforded to *Anders* appellants as compared to *Turner/Finley* petitioners/appellants arises because the right to counsel on direct appeal and the right to the direct appeal itself are constitutional ones.").

THE COURT: All right.

THE COURT: You have heard what the evidence is going to be against you. Do you agree that's all true, what they say happened, [Appellant]?

[Appellant:] Yes.

[THE COURT:] Everything they have said is true and correct?

[Appellant:] Yes.

N.T. Plea at 29-30.

The trial court also concluded that this transcript "shows that Appellant pled guilty to third-degree murder in this case to avoid a possible death sentence for a second murder." Trial Court Opinion (TCO), 2/5/25, at 3 (unnecessary capitalization and footnote omitted). The court further observed that "[t]he terms of the plea agreement or the colloquy do not specify whether ADA … Colihan would or would not talk to the media." *Id.* Thus, the court determined that "there is no indication that any terms of the plea agreement were not carried out." *Id.*

We agree. In none of his filings did Appellant point to anywhere in the plea colloquy that the Commonwealth promised him — or that he expressed any belief in his entitlement to — the ability to challenge his Pittsburgh murder conviction, and the imposition of a mandatory life sentence in the instant case, under section 9715(b).[4]

_____

[4] We also point out that even if ADA Colihan's statement to the press did amount to a violation of Appellant's plea, that statement was made just **three days after** Appellant's plea was entered, yet he did not file any post-sentence motion to withdraw his plea. Instead, Appellant waited **25 years** to raise this
*(Footnote Continued Next Page)*

Moreover, even if there was such an agreement, we would conclude that Appellant failed to prove that ADA Colihan's statement to the media violated it. Appellant argued before the trial court that the ADA's statement violated his plea agreement because it "served as 'evidence' to a federal court judge adjudicating *habeas* claims in the Pittsburgh case that [Appellant's] 'admission of guilty to the Pittsburgh murder in the course of his guilty plea colloquy to the Philadelphia murder' rendered hi[m] incapable of demonstrating his actual innocence." Amended Petition to Enforce the Plea Agreement at unnumbered 3 (citing Exhibit 3 (**Palmer v. Wingard**, No. 3:16-cv-239-KRG-KAP (W.D. Pa. 2016) ("Supplement to Report and Recommendation")). However, in the federal court's decision, it stated that, "***[e]ven leaving aside*** [Appellant's] statement that he made an admission of guilt to the Pittsburgh murder in the course of his guilty plea colloquy to the Philadelphia murder, [Appellant] does not offer evidence, much less compelling evidence, of his actual innocence." ***Id.*** at Exhibit 3 (emphasis added). Clearly, the court's language shows that its rejection of Appellant's claim of actual innocence was **not** premised on ADA Colihan's statement that Appellant admitted his guilt to the Pittsburgh murder.

Thus, we conclude that Appellant's allegation that ADA Colihan's statement to the media violated his plea agreement is meritless. Nothing in

_____

claim in his petition filed in February of 2020. The excessive delay in Appellant's raising this claim would support our decision to deny him relief, even if this issue had any arguable merit.

the record before us demonstrates that there was any explicit agreement regarding Appellant's ability to challenge his Pittsburgh murder conviction and, even if there was, Appellant has not proven that ADA Colihan's statement to the media precluded him from doing so.

Next, Attorney O'Hanlon states that Appellant wishes to challenge the effectiveness of his initial counsel herein, Attorney Pileggi, for his handling of Appellant's claim that his plea agreement was violated. Essentially, Appellant seeks to contend that Attorney Pileggi acted ineffectively by not focusing his argument on the federal court's decision denying him *habeas* relief, which he claims proves that he was prejudiced by ADA Colihan's statement to the press. Appellant also claims that Attorney Pileggi was ineffective for not arguing that his petition was not cognizable under the PCRA.

Neither of these claims have merit. First, for the reasons stated above, we conclude that the federal court did not rely on ADA Colihan's statement that Appellant admitted to the Pittsburgh murder in denying him relief. We also conclude that Appellant's plea agreement was not violated by the ADA's statement to the press. Therefore, these claims of ineffectiveness lack arguable merit.

Second, we have determined herein that even though Appellant's petition is not cognizable under the PCRA, Appellant is still not entitled to relief. Consequently, Appellant cannot demonstrate that prejudice resulted from Attorney Pileggi's failure to argue this claim before the trial court.

In sum, we agree with Attorney O'Hanlon that the issues Appellant seeks to raise herein are meritless. Accordingly, we affirm the order denying Appellant's petition to enforce his plea agreement, and grant counsel's petition to withdraw.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/19/2025